UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ABIGAIL PEREZ,

    Plaintiff,

v.                                                                Case No. 17-C-1693

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

# DECISION AND ORDER

Plaintiff Abigail Perez filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act. Perez contends that the administrative law judge's (ALJ) decision is flawed and requires remand for three reasons: (1) the ALJ failed to properly consider the supplemental vocational opinion of Paula Santagati, a senior vocational rehabilitation counselor; (2) the ALJ failed to properly assess the medical opinions of consulting examining psychologist Steven Krawiec and the non-examining state agency consultants; and (3) the ALJ failed to account for Perez's moderate limitations with regard to concentration, persistence, or pace when posing hypotheticals to the vocational expert (VE) and in her residual functional capacity (RFC) analysis. For the reasons that follow, the decision of the Commissioner will be reversed.

## BACKGROUND

In August of 2013, Perez filed a Title II application for disability insurance benefits, alleging that her disability began on September 26, 2012. She listed anxiety disorder, high blood pressure,

chronic neck and back pain, mental illness, severe depression, and bipolar disorder as the conditions that limited her ability to work. R. 229. Following the denial of her application, both initially and on reconsideration, Perez requested a hearing before an ALJ. On April 27, 2016, ALJ Janice M. Bruning conducted a video hearing where Perez, who was represented by counsel, and a VE testified. R. 50–77. At the hearing Perez amended her onset date to January 10, 2013. R. 63.

Perez, who was 48 at the time of the hearing, has a GED, is certified to be a CNA, is separated from her husband, and was receiving state-funded food assistance and health insurance. R. 52–53. Perez testified that she has difficulties sleeping, for which she takes medication, and uses both a CPAP and VPAP at night. R. 55, 69–70. Perez testified that she has periodic headaches, carpal tunnel syndrome, and difficulty standing, walking, climbing stairs, and bending. R. 56–57, 67. Perez also testified that she has difficulties reaching overhead due to her fibromyalgia and prior surgeries to her neck and back and that her arms get swollen and numb. R. 57–58, 66. Although she had both neck and back surgery, Perez stated that the surgeries did not improve her symptoms, steroid injections only provide limited relief, she still has pain in her legs, and her legs give out while walking despite the use of a cane. R. 65–67. Perez further testified that she experiences pain everywhere as a result of fibromyalgia and that therapy has been ineffective.

Regarding her mental health, Perez testified that she has anxiety issues, PTSD, difficulties interacting with people and being around crowds of people, anger issues, hears voices in her head, is bi-polar, and that she takes various medications to address these symptoms. R. 64–65, 68–69. Due to her mental health issues, Perez stated that she has difficulties concentrating for more than five minutes at a time. R. 69.

Perez stated she receives assistance with her personal care, laundry, and cleaning from a friend and that she does not drive, and has difficulties leaving her home, usually only once a month, due to her depression. R. 58–60, 63–64, 71. Perez testified that she watches some Spanish soap operas and checks Facebook daily. R. 60–61. Perez also testified that she is in alcohol and drug abuse treatment and has a DUI conviction. R. 62–63.

In a written decision dated October 28, 2016, the ALJ concluded Perez was not disabled. R. 18–40. Following the agency's five-step sequential evaluation process, the ALJ concluded that Perez had not engaged in substantial gainful activity since January 10, 2013 at step one. R. 20. At step two, the ALJ found Perez had the following impairments: past cervical and lumbar surgery, degenerative joint disease of the left knee, fibromyalgia, obesity, attention disorder, affective disorder, anxiety disorder, and substance and alcohol abuse disorder. R. 20. At step three, the ALJ determined Perez's impairments or combination of impairments did not meet or medically equal any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 22. At step four, the ALJ concluded Perez has the RFC to perform sedentary work, except

> she can never climb ladders, ropes, or scaffolding. She can no more than occasionally climb ramps and stairs, balance, stoop, crouch, kneel, crawl, bend, and twist. She should avoid concentrated exposure to work hazards such as unprotected heights and dangerous moving machinery. She should have a sit/stand option where after sitting for 30 minutes she is allowed to stand for one to two minutes. She should be allowed to use a cane as needed to get to and from her workstation. She can understand, remember, and carry out no more than simple, routine tasks. She is limited to performing the same tasks day in and day out. She should not have contact with the public for work related purposes and no more than occasional contact with coworkers and supervisors. She should not have strict quotas but can do work that is measured by what is completed by the end of the workday.

R. 26. The ALJ found that Perez was unable to perform any past relevant work. R. 36. At step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy

3

that she can perform, such as address clerk, account clerk, and bench sorter. R. 36–39. Based on these findings, the ALJ concluded Perez was not disabled within the meaning of the Social Security Act. R. 40. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Perez's request for review. Thereafter, Perez commenced this action for judicial review.

## LEGAL STANDARD

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported her decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusion drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

4

**ANALYSIS**

**A. RFC Determination**

Perez contends that the ALJ erred by failing to properly assess her moderate limitations in concentration, persistence, and pace when formulating the RFC assessment and the hypothetical question posed to the VE. With respect to mental limitations, the ALJ found that Perez had the following RFC:

> She can understand, remember, and carry out no more than simple, routine tasks. She is limited to performing the same tasks day in and day out. She should not have contact with the public for work related purposes and no more than occasional contact with coworkers and supervisors. She could not have strict quotas but can do work that is measured by what is completed by the end of the workday.

R. 26. This was essentially the same language used in the hypothetical question that the ALJ posed to the VE during the hearing. R. 73.

In determining Perez's RFC, the ALJ gave "significant weight" to the opinions of Dr. Esther Lefvre and Dr. Darrell Snyder, both state agency psychological consultants. Both Dr. Lefebre and Dr. Snyder included in their findings as part of the Psychiatric Review Technique (PRT) that each performed that Perez had moderate "difficulties in maintaining concentration, persistence or pace" and in social functioning. R. 89–90, 112. The ALJ likewise found that Perez had moderate difficulties in concentration, persistence, or pace, as well as in social functioning, at steps 2 and 3 of the sequential evaluation process. R. 24–25.

As the ALJ noted in her decision, the finding of moderate limitations in concentration, persistence, or pace, or in any of the other broad functional areas included in the "Paragraph B" criteria, at steps 2 and 3 of the sequential evaluation is not intended to be an RFC finding. R. 26. Instead, these are preliminary findings called for by the SSA's "special technique" for evaluating

mental impairments which is described in the applicable rulings and regulations. SSR 96-8p; 20 C.F.R. §§ 404.1520a, 416.920a. The "special technique," or "psychiatric review technique," is an initial screening tool that the SSA uses to decide whether a claimant has a severe mental impairment that either meets or equals the severity of one of the listed impairments or, if not, is nevertheless severe and requires further evaluation. 20 C.F.R. § 404.1520a(d). When, using the special technique, the adjudicator finds that the claimant has a severe mental impairment that neither meets nor is equivalent in severity to any listing, a mental residual functional assessment is completed. § 404.1520a(d)(3). As SSR 96-8p explains "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." 1996 WL 374184, at *4. The ALJ explained as much in her decision.

That the ALJ's findings with respect to the "paragraph B" criteria are not intended as the claimant's RFC is also apparent from the significant differences between the PRT and the MRFCA forms. The PRT form describes the paragraph B functional areas in broad terms. The category at issue here, for example, is "maintaining concentration, persistence, *or* pace." R. 90, 112 (emphasis added). Because the three different functions—concentration, persistence, pace—are listed in the disjunctive, a notation indicating the claimant has moderate difficulties does not indicate whether the limitation applies to all three, or only one or two, of the functions. Section I of the MRFCA form, in contrast, breaks the broad areas of mental function listed on the PRT into separate activities or abilities. R. 94–95, 115–16. The ALJ said as much in her decision. R. 26.

But this is not the law of this circuit. The Seventh Circuit has long regarded the ALJ's findings at steps 2 and 3 of the sequential evaluation as RFC findings that the ALJ must include at steps 4 and 5 of the sequential evaluation process and in the hypothetical question posed to the VE. *See Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003). And the court has construed the phrase "concentration, persistence or pace" in an "inclusive," as opposed to "exclusive" sense, meaning that the word "or" in this context means "and." *See Varga v. Colvin*, 794 F.3d 809, 815–16 (7th Cir. 2015). The Seventh Circuit has also made clear that limiting a claimant to "no more than simple routine tasks" without "strict quotas" is insufficient to account for a finding of moderate limitations in concentration, persistence, or pace on the PRT form. As the court recently explained in *DeCamp v. Berryhill*, "we have 'repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'" 916 F.3d 671, 676 (7th Cir. 2019) (quoting *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014)). Excluding "strict quotas" from simple, routine tasks is also insufficient because, as *DeCamp* also noted, "[w]e have previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *Id.* at 675–76.

It thus follows that the ALJ's RFC and corresponding hypothetical question to the VE failed to capture all of Perez's limitations in concentration, persistence, and pace, as those terms are understood in this circuit. While the ALJ's attempt to translate such a limitation into job-related restrictions that fit within a VE's terminology is understandable, doing so risks likely appeal and almost certain reversal. *See, e.g.*, *Winsted v. Berryhill*, 915 F.3d 466, 471 (7th Cir. 2019) ("Though

7

particular words need not be incanted, we cannot look at the absence of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question." (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010))). In other words, if the ALJ finds that the claimant has moderate difficulties in concentration, persistence, and pace, the ALJ should simply ask the VE to assume moderate difficulties with concentration, persistence, and pace, without trying to translate for the VE what precisely the ALJ concluded the claimant could and could not do. While this may seem inconsistent with the SSA's regulations that reserve "the final responsibility" for deciding the claimant's RFC to the Commissioner, 20 C.F.R. §§ 404.15227(d)(2), 416.927(d)(2), it is the clear law of this circuit. The ALJ failed to do so here, and language used to convey the same limitation has previously been rejected by the Seventh Circuit.

This alone is enough to require reversal. But the Commissioner's decision suffers from other defects as well. In addition to the PRT forms, Drs. Snyder and Lefevre also completed the MRFCA forms that are intended to provide the more "detailed assessment [of the claimant's mental RFC] by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." 1996 WL 374184, at *4. Here, the state agency consultants are instructed to first complete a "worksheet" where they are asked to rate the claimant's ability to perform certain activities by entering next to each ability described one of the following notations: "not significantly limited," "moderately limited," "markedly limited," "no evidence of limitation in this category," or "not ratable on available evidence." SSA Program Operations Manual System (POMS) DI 24510.060 (July 2, 2018), https://secure.ssa.gov/poms.nsf/lnx/0424510060. The POMS emphasizes

that "**Section I is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." *Id.* (bold in original). After completing the Section I worksheet, the state agency consultant is to set out in Section III of the form in narrative format the "actual mental RFC assessment, "explaining the conclusions indicated in Section I, in terms of the extent to which these mental capacities or functions could or could not be performed in a work setting." *Id.* The POMS states that the consultant is to indicate a capacity is "**moderately limited**" "when the evidence supports the conclusion that the individual's **capacity to perform** the activity is **impaired**." POMS DI 24510.063 (bold in original). The POMS further notes, however, that "**the degree and extent** of the capacity or **limitation** must be described in narrative format in Section III." *Id.* (bold in original)

The electronic version of the MRFCA that was used by the state agency consultants in this case does not clearly delineate Section I from Sections II and III. But it does contain the following instruction to the state agency consultant:

> The questions below help determine the individual's ability to perforrm sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussions(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory test boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation text box.

R. 94, 115.

In completing Section I of the MRFCA form, Dr. Snyder noted that Perez was "moderately limited" in the following capacities:

9

- the ability to understand and remember detailed instructions;

- the ability to carry out detailed instructions;

- the ability to maintain attention and concentration for extended periods;

- the ability to work in coordination with or in proximity to others without being distracted by them;

- the ability to interact appropriately with the general public;

- the ability to respond appropriately to changes in the work setting; and

- the ability to travel in unfamiliar places or use public transportation.

R. 94–95. Dr. Lefevre noted that Perez was moderately limited in most of the same capacities and also in the ability to accept instructions and respond appropriately to criticism from supervisors. R. 115–16.

In the narrative sections of his report, Dr. Snyder noted Perez had "less cognitive strength for the complex;" "less concentration based on attention and anxiety issues;" "less comfort with others, especially those not known to her;" and "problems with travel and phobias, as well as with focus to increase pace or in other ways adapt to changing circumstance." R. 95. In the space for "additional explanation," Dr. Snyder wrote:

> [Claimant] has problems with understanding and with memory of more complex information, and in carrying out complex tasks but [claimant's] ability to sustain concentration and carry out routine, repetitive tasks of 1-2 steps would be intact. The claimant's ability to handle public contact would be reduced, but adequate to handle brief infrequent and superficial contact. The claimant's ability to cope with known co-workers and supervisors would be adequate. The [claimant] could tolerate normal work expectations for pace and productivity but when more is expected, or differing locales and differing staff are frequent, quantity and quality of work likely diminishes.

10

R. 95–96. In the narrative sections of her MRFCA, Dr. Lefevre stated "Claimant would have difficulty remaining on task for extended periods of time due to her bipolar and depression symptoms," and "Claimant should avoid jobs that involve working with the general public due to her anxiety and anger management problems. She would also have problems accepting criticism from supervisors due to anger problems." R. 116.

Notwithstanding the inconsistencies between Dr. Snyder's MRFCA report and Dr. Lefevre's, the ALJ gave them both "significant weight," without reconciling them. R. 34. While both found that Perez was not significantly limited in her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," R. 95, 116, Dr. Snyder concluded in the narrative section of his report that notwithstanding her limitations, Perez's "ability to sustain concentration and carry out routine, repetitive tasks of 1–2 steps would be intact." R. 95. Dr. Snyder added that Perez's ability to handle public contact, though reduced, was "adequate to handle brief, infrequent and superficial contact," that her "ability to cope with known co-workers and supervisors would be adequate," and that she "could tolerate normal work expectations for pace and productivity." R. 96. This was essentially the mental RFC the ALJ adapted. But Dr. Lefevre, whose opinion the ALJ also accorded "significant weight," noted in the narrative sections of her report only what Perez would have difficulty doing and left unsaid what she could do. R. 116.

The ALJ also failed to include the additional limitations Dr. Lefevre found, as well as the moderate limitations that both state agency consultants noted on their worksheets, that were not accounted for in the narratives. For while it is true that the state agency consultants who complete the forms are instructed that their worksheet findings are not RFC findings, that is also not the law

11

in this circuit. As the court explained in *DeCamp*, "even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms." 916 F.3d at 676 (citing *Yurt*, 758 F.3d at 859). The narrative section of both Dr. Snyder's and Dr. Lefevre's MRFCA form did not account for the worksheet findings of both that Perez was moderately limited in "the ability to maintain attention and concentration for extended periods." R. 94, 115. Nor did the narrative sections account for Dr. Lefevre's additional finding that Perez was moderately limited in "the ability to accept instructions and respond appropriately to criticism from supervisors," R. 116, or Dr. Snyder's additional finding that Perez had "problems with travel and phobias." R. 96. For this reason, too, reversal is required.

**B. Other Issues**

Perez also contends that the ALJ erred in giving more weight to the opinions of the non-examining state agency consultants than she gave to the medical opinion of psychologist Steven Krawiec who performed a consultative examination. After an interview of unknown duration, Dr. Krawiec summarized his findings as follows:

> This is an individual who described having some mood difficulty and some difficulty with anxiety with regard to driving and just getting away from the house in general. I will diagnose depressive disorder, not otherwise specified and specific phobias.
>
> This individual's mood disturbance *conceivably could interfere* with her ability to get herself into and remain in a workplace and perform efficiently. She spoke of her anger being a significant component of the mood disturbance and said that she has quit jobs in the past because she became angry. She said that she had also been fired because of what she referred to as insubordination. As such, *it might be that she would have some difficulty* getting along with others in the workplace, particularly bosses and supervisors if that were to be on display in a work setting.

> Getting herself out of the house and to a workplace, particularly if she had to drive herself, *could cause some problems* for her based on how she spoke about that sort of thing.
>
> I believe that this individual has adequate cognitive capacity to understand and carry out simple job instructions. She did not display notable difficulty with attention, concentration, or her memory.
>
> Workplace changes and stressors would be inadvisable. Such things could exacerbate her mental health/emotional difficulties.

R. 753 (emphasis added).

This is a clear example of how a claimant's reports to a physician or psychologist of feeling sad and having problems concentrating and following through on tasks become the findings of an expert when transcribed in a report and reviewed by state agency consultants. But even aside from this problem, given the uncertainty and vagueness of the italicized language, along with Dr. Krawiec's failure to distinguish between what the claimant does and does not do from what she can and cannot do, one can only wonder what an ALJ is supposed to conclude from such a report. The same problems appear in the non-examining consultants' reports. If the consultants SSA pays to provide the expert opinions needed to decide a claim fail to clearly state what a claimant can and cannot do, perhaps they should be asked to rewrite their reports. That is what the Commissioner should do on remand here. Dr. Krawiec, as well as Dr. Lefevre, should be directed to provide reports that clearly state whether in their opinion Perez's mental impairment would prevent her from getting herself to work and holding a job. Once reports providing clear opinions are submitted, the ALJ should again assess the various opinions and explain which she credits and why.

There remains the issue of the supplemental vocational report submitted by Perez. Perez contends that the ALJ failed to properly consider the supplemental vocational report of Paula

Santagati and as a result, failed to resolve a material conflict in the evidence, thus failing to establish a logical bridge to her conclusion. In her report, Santagati stated that "a limitation of occasional interaction with coworkers and supervisors precludes all work." R. 374. The ALJ gave Santagati's opinion no weight for three reasons: (1) the jobs discussed in Santagati's statements do not correspond with those identified by the VE at Perez's hearing; (2) there is no evidence that Santagati knew about Perez's unique RFC; and (3) no indication that Santagati has been identified as a vocational expert by the Agency.

The first two reasons are sufficient justification for the ALJ to give Santagati's opinion no weight. None of the jobs Santagati discussed in her opinion—cashiering, dishwasher, maid, and positions at assisted living facilities—overlap with the positions the VE identified—address clerk, account clerk, and bench sorting positions. More importantly, there is no evidence that Santagati's opinion considered the particular RFC for Perez. There is no mention of Perez's name. The opinion itself is dated October 1, 2015, nearly *7 months* before Perez's hearing. There is no connection whatsoever between Santagati's opinion and Perez, not to mention Perez's particular RFC. Santagati's opinion did not merit consideration for these reasons, and the ALJ was correct to give it no weight.

Regarding the ALJ's third reason, although Santagati was not identified as a vocational expert by the agency, that is not a requirement: "the submission and consideration of post-hearing evidence are common in social security disability cases—especially evidence consisting of "posthearing affidavits of experienced workers, supervisors, etc." *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010). This is not a reversible error, however, as the first two reasons relied on by the ALJ are sufficient.

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is **REVERSED** and **REMANDED** to the SSA pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent herewith. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** this  21st  day of March, 2019.

                                                s/ William C. Griesbach
                                                William C. Griesbach, Chief Judge
                                                United States District Court